IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM GUY, | No. CIV S-03-1208-JAM-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| KIMBRELL, et al., | |
| Defendants. | |
| _____/ | |

      Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendants' motion under Rule 12 of the Federal Rules of Civil Procedure.  (Doc. 38).  In their motion, defendants argue that this action should be dismissed under Rule 12(b) because plaintiff fails to state a claim upon which relief can be granted and because plaintiff did not exhaust administrative remedies.  Defendants also argue that they are entitled to judgment on the pleading under Rule 12(c) based on qualified immunity.  Plaintiff has filed an opposition (Doc. 47), and defendants have filed a reply (Doc. 50).

/ / /

/ / /

## I. BACKGROUND

This action proceeds on plaintiff's second amended complaint (Doc. 14), filed on July 3, 2006. Plaintiff names four individuals as defendants – Kimbrell, Borges, Peterson, and Neves. Plaintiff states that, on April 3, 2002, he injured his knee while exiting the shower. He states that, as a result of this injury, defendant "Borges ordered treatment: ibuprofin for the pain and orthopedic consultation." However, plaintiff also claims that he submitted a prison grievance the next day alleging that defendant Borges "failed to make a physical examination of his injured knee." According to plaintiff, on November 13, 2002, defendant Kimbrell assigned defendant Neves to interview plaintiff concerning his knee injury and inmate grievance against defendant Borges. Defendants responded to his grievance by confirming that he had received treatment following the injury on April 3rd.

Plaintiff next alleges that, on December 2, 2002, he "re-submitted" his grievance for a second level review "re-asserting he was suffering pain in his knee." Plaintiff's second grievance was reviewed by defendant Peterson who "partially granted" the grievance and ordered an orthopedic consultation which occurred on February 3, 2003. Even though plaintiff confirms that he received an orthopedic consultation, he states that, on February 17, 2003, he requested a Director's level review based on lack of medical treatment.

Plaintiff asserts several constitutional violations arising from these facts. Specifically, he states that defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment. It appears the Eighth Amendment claim is directed only to defendant Borges. He also claims that defendants obstructed his access to the prison grievance system "in retaliation for the use thereat," in violation of the First Amendment. The First Amendment claim appears directed only at defendants Peterson, Neves, and Kimbrell. Plaintiff seeks compensatory and punitive damages.

/ / /

/ / /

## II. APPLICABLE STANDARDS

### A. Motion to Dismiss – Rule 12(b)

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 127 S.Ct. 2197 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct.1955, 1964-65 (2007). Allegations of specific facts are not necessary so long as the statement of facts gives the defendant fair notice of what the claim is and the grounds upon which it rests. See Erickson, 127 S.Ct. at 2197.

To determine whether a complaint states a claim upon which relief can be granted, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

1   Under these standards, a statute of limitations defense may be raised in a motion to dismiss.  Finally, leave to amend must be granted ". . . [u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

A motion to dismiss for lack of exhaustion of administrative remedies is properly the subject of an unenumerated motion under Federal Rule of Civil Procedure 12(b).  See Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  "In deciding a motion to dismiss for failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact."  Id. at 1119-20.  If the court concludes that administrative remedies have not been exhausted, the unexhausted claim should be dismissed without prejudice.  See id. at 1120; see also Jones v. Bock, 127 S.Ct. 910 (2007).

**B.   Motion for Judgment on the Pleadings – Rule 12(c)**

Motions under Rule 12(c) are similar to motions under rule 12(b) in that judgment on the pleadings is appropriate if ". . . it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations."  McGlinchy v. Shell Chemical Co., 845 F.2d 802, 810 (9th Cir. 1988).  Rather than testing whether the factual allegations state a claim, motions under Rule 12(c) test whether, even if all the facts alleged in the complaint can be proved, defendants are nonetheless entitled to judgment as a matter of law.  See Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1989).  All non-conclusory factual allegations in the complaint must be assumed to be true.  See Austad v. United States, 386 F.2d 147, 149 (9th Cir. 1967); see also McGlinchy, 845 F.2d at 810.

/ / /

/ / /

/ / /

/ / /

/ / /

4

## III.  DISCUSSION

Defendants argue:  (1) plaintiff fails to state an Eighth Amendment claim against defendant Borges because plaintiff does not allege any facts showing deliberate indifference; (2) plaintiff failed to exhaust administrative remedies as to his claims against defendants Peterson, Kimbrell, and Neves; (3) plaintiff fails to state a stand-alone claim against defendants Peterson, Kimbrell, and Neves based on their handling of plaintiff's inmate grievances; and (4) defendants are entitled to qualified immunity.

### A.  Eighth Amendment Claim – Defendant Borges

As indicated above, this claim appears to be directed only to defendant Borges.  Plaintiff claims defendant Borges was deliberately indifferent to his knee injury by failing to provide treatment.  The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment.  See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994).  The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency."  Estelle v. Gamble, 429 U.S. 97, 102 (1976).  Conditions of confinement may, however, be harsh and restrictive.  See Rhodes v. Chapman, 452 U.S. 337, 347 (1981).  Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety."  Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986).  A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm.  See Farmer, 511 U.S. at 834.  Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind."  See id.

/ / /

/ / /

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986). Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference. See Lopez, 203 F.3d at 1131. Where delay is alleged, however, the prisoner must also demonstrate that the delay led to further injury. See McGuckin, 974 F.2d at 1060.

Negligence in diagnosing or treating a medical condition does not, however, give rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 106. Moreover, a difference of opinion between the prisoner and medical providers concerning the appropriate course of treatment does not give rise to an Eighth Amendment claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Defendants contend that "[t]he alleged facts do not show or even suggest that Dr. Borges knowingly disregarded Guy's medical needs." The court agrees. In particular, plaintiff specifically alleges that defendant Borges provided treatment by prescribing pain medication and scheduling an orthopedic consultation. Therefore, assuming as the court must that plaintiff's factual allegations are true, plaintiff cannot state a claim based on deliberate indifference. At best, plaintiff's complaint alleges negligent treatment, which does not state an Eighth Amendment claim under § 1983.

**B. Exhaustion – Defendants Peterson, Kimbrell, and Neves**

Defendants Peterson, Kimbrell, and Neves argue that plaintiff's claims against them should be dismissed because plaintiff failed to exhaust his administrative remedies. Prisoners seeking relief under § 1983 must exhaust all available administrative remedies prior to bringing suit. See 42 U.S.C. § 1997e(a). This requirement is mandatory regardless of the relief sought. See Booth v. Churner, 532 U.S. 731, 741 (2001) (overruling Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999)). Because exhaustion must precede the filing of the complaint, compliance with § 1997e(a) is not achieved by exhausting administrative remedies while the lawsuit is pending. See McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002). The Supreme Court recently addressed the exhaustion requirement in Jones v. Bock, 127 S.Ct. 910 (2007), and held: (1) prisoners are not required to specially plead or demonstrate exhaustion in the complaint because lack of exhaustion is an affirmative defense which must be pleaded and proved by the defendants; (2) an individual named as a defendant does not necessarily need to be named in the grievance process for exhaustion to be considered adequate because the applicable procedural rules that a prisoner must follow are defined by the particular grievance process, not by the PLRA; and (3) the PLRA does not require dismissal of the entire complaint if only some, but not all, claims are unexhausted. The Supreme Court also held in Woodford v. Ngo that, in order to exhaust administrative remedies, the prisoner must comply with all of the prison system's procedural rules ". . . so that the agency addresses the issues on the merits." 126 S.Ct. 2378,

2385-88 (2006). Thus, exhaustion requires compliance with "deadlines and other critical procedural rules." Id. at 2386. Partial compliance is not enough. See id.

A prison inmate in California satisfies the administrative exhaustion requirement by following the procedures set forth in §§ 3084.1-3084.7 of Title 15 of the California Code of Regulations. In California, inmates "may appeal any departmental decision, action, condition, or policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code Regs. tit. 15, § 3084.1(a). These regulations require the prisoner to proceed through several levels of appeal: (1) informal resolution; (2) formal appeal; (3) second level appeal to institution head; (4) third level appeal to the director of the California Department of Corrections and Rehabilitation. A decision at the third formal level, which is also referred to as the director's level, is not appealable and concludes a prisoner's departmental administrative remedy. See Cal. Code Regs. tit. 15, §§ 3084.1(a) and 3084.5(e)(2). Departmental appeals coordinators may summarily reject a prisoner's untimely administrative appeal. See Cal. Code Regs. tit. 15, §§ 3084.3(c)(6) and 3084.6(c). If a group of inmates intend to appeal the same decision or action, one grievance form is used and a list of the participating inmates must be attached. The list must be legible and state the inmates' names, departmental identification numbers, and housing assignment. The form must also be signed by all participating inmates. Currently, California regulations do not contain any provision specifying who must be named in the grievance.

In certain circumstances, the regulations make it impossible for the inmate to pursue a grievance through the entire grievance process. See Brown v. Valoff, 422 F.3d 926, 939 n. 11 (9th Cir. 2005). Where a claim contained in an inmate's grievance is characterized by prison officials as a "staff complaint" and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. See id. at 937 (citing Booth, 532 U.S. at 736 n. 4). Thus, the claim is exhausted when it is characterized as a "staff complaint." See id. at 940. If there are separate claims in the same grievance for which further administrative review could provide relief, prison regulations require that the prisoner be notified

that such claims must be appealed separately. See id. at 939. The court may presume that the absence of such a notice indicates that the grievance did not present any claims which could be appealed separate from the confidential "staff complaint" process. See id.

A review of the complaint indicates that, according to plaintiff, he filed grievances concerning the medical treatment provided by defendant Borges. It does not appear that plaintiff filed any grievances concerning his claims against defendants Peterson, Kimbrell, and Neves. Thus, defendants are correct that plaintiff has not exhausted claims against these defendants. For this reason, plaintiff's claims relating to his inmate grievances should be dismissed.

### C. Claims Relating to Inmate Grievances

Defendants also argue that plaintiff's inmate grievance claims should be dismissed because plaintiff cannot state a stand-alone claim based on processing of his grievances. To the extent the complaint states a stand-alone claim based on his grievances, defendants are correct. Prisoners have no stand-alone due process right to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (holding that there is no liberty interest entitling inmates to a specific grievance process).

However, plaintiff states in his complaint that he is asserting a First Amendment claim based on retaliation. Specifically, he argues that defendants delayed processing his grievances in retaliation for having filed grievances in the first place. Defendants do not address this aspect of plaintiff's claim. However, as discussed above, the court finds that plaintiff has not exhausted any claims related to his inmate grievances. Therefore, whether the claims are based on a stand-alone right to a grievance process or retaliation, the claims should be dismissed.

/ / /

/ / /

/ / /

/ / /

#### D.     Qualified Immunity

Defendants also argue that they are entitled to qualified immunity as to all claims. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law

governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions.  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

In this case, plaintiff cannot establish the violation of any clearly established right.  As discussed above, the facts alleged by plaintiff do not give rise to a cognizable Eighth Amendment claim based on medical treatment.  Further, there is no stand-alone right to the inmate grievance process.  Finally, the court concludes that the facts alleged do not give rise to a First Amendment retaliation claim.  In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must allege that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam).  In meeting this standard, the prisoner must allege a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also allege that his constitutional right was actually chilled by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000).  In this case, it is clear that, notwithstanding any alleged delays in processing his grievances, plaintiff was able to present grievances and that they were considered by prison officials at all levels of review.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' motion (Doc. 38) be granted and that the Clerk of the Court be directed to enter judgment in defendants' favor and close this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  June 27, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE